UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

In re:  Michael B. White and
Darla Kay White (Whites I),

       Debtors,

MICHAEL B. WHITE, and
DARLA KAY WHITE,

       Appellants,                  Case No. 14-cv-14599

v.                                                     Honorable Thomas L. Ludington

DANIEL M. MCDERMOTT, United States Trustee,
FRANKENMUTH CREDIT UNION,

       Appellees.
_____/

**ORDER DENYING MOTION FOR RECONSIDERATION AND DENYING IMPROPERLY FILED MOTIONS AS MOOT**

On December 5, 2014, Appellants Michael and Darla White appealed a decision of the Bankruptcy Court for the Eastern District of Michigan that converted their Chapter 11 bankruptcy to a proceeding under Chapter 7 of the bankruptcy code. The decision of the bankruptcy court was affirmed on July 31, 2015. The Whites have moved for reconsideration of that decision.

**I.**

The facts as conveyed in the July 31 Opinion have not been objected to by the Whites in material part. To the extent the Whites do object to the facts found on appeal, their objections are addressed below. Since those objections, ultimately, are meritless, the facts as presented in the July 31 Opinion will be presented identically here.

**A.**

Michael and Darla White were a husband and wife who resided in Birch Run, Michigan.[1] Michael White has worked in the fields of construction and sand mining. Darla White worked for a number of years in the insurance and trucking industries. The Whites' careers changed significantly in 2007 when Darla White began suffering from a disability. She was no longer able to work and Michael, facing his own issues with employment, took time to care for her. Darla's health never recovered after 2007 and she was unable to return to work. Eventually Michael found steady employment in the meat market at a local Meijer's, where he still works.

**B.**

The Whites purchased their primary residence at 11085 Block Road, Birch Run, Michigan ("Block Road property"), in 1990. The homestead consists of 40 acres of farmland and a farmhouse where the Whites reside. They paid the mortgage loan for the house in full in 2006. In 2007, the White sought a line of credit from Frankenmuth Credit Union ("FCU"). Their credit request was approved and they secured a $100,000.00 loan from FCU that was secured by a mortgage against the Block Road property. The loan money was withdrawn using a credit card issued to the Whites.

The Whites withdrew the full amount of the loan within eighteen months of the account being opened. By 2010, the Whites began to fall behind on their loan payments. They stopped making payments altogether in 2011. In response, FCU initiated a foreclosure action in Saginaw County Circuit Court. The Whites defended the action, contending that FCU's mortgage was invalid, but were unsuccessful. The Saginaw County Circuit Court entered a judgment of

---

[1] Darla White passed away after appeal was taken in this case.

foreclosure in favor of FCU on July 15, 2011. FCU was authorized to hold a foreclosure sale after August 5, 2011 and to recover $113,789.23 in costs and fees.

**C.**

On July 30, 2015, before FCU conducted a foreclosure sale, the Whites filed for bankruptcy and the automatic stay barred the foreclosure sale. As part of the Chapter 11 bankruptcy proceeding, the Whites were required to provide monthly operating reports to the bankruptcy court. Those reports were timely filed each month until the case was converted to a Chapter 7 proceeding.

**D.**

During the roughly one year that the Whites were in bankruptcy they reported a negative cash flow in their monthly operating reports more often than not. Indeed, seven of the twelve reports reflected a deficit. These reports also did not make any mention of the mortgage payments. The Whites also did not consistently service their car loan while in bankruptcy, evidenced by the fact that only some of their monthly operating reports show payments on that loan.

In addition to filing monthly operating reports, the Whites had to file a schedule of their assets. This was filed with their initial petition, but was also included in the monthly reports. While the asset schedules initially reflected significant assets relative to their debt, the Whites reduced the value assigned to their assets during the bankruptcy proceeding. Between April and May 2014, the Whites reduced the estimated asset value of their Block Road property from $360,000.00 to $170,000.00 and their WCI$^2$ stock from $240,000.00 to $20,520.00.

---

[2] This is the acronym representing the Whites' personal incorporated entity. They use this entity to sell items on Amazon, amongst other things.

The Whites proposed two plans of reorganization. The first came ten months into the bankruptcy. All significant parties in interest objected to confirmation of the plan, including FCU, Ally Financial (holder of the Whites' car loan), and the United States Trustee. The plan's defining feature was a reduction of the amount owed by the Whites to FCU under the loan secured by their residence. At the time the first plan was proposed, FCU was owed $158,401.60 but the Whites proposed reducing that amount to $70,000.00, $30,000.00 of which would come from a Michigan state program set up to help those hardest hit by the mortgage crisis and only $40,000.00 would be paid by the Whites. The Whites also proposed that the $40,000.00 be paid over 25 years. The plan was not confirmed and the Whites were given 28 days to propose a new plan.

Shortly after the Whites proposed their first plan, the United States Trustee moved to have their case dismissed or converted to a Chapter 7 proceeding. FCU and Ally also moved to have the automatic stay lifted, allowing FCU to continue the foreclosure.

**E.**

The Whites filed their second plan of reorganization on August 21, 2014. A hearing was held the next day on the plan, the United States Trustee's motion to dismiss or convert, and the creditors' motion to lift the automatic stay. As with the first plan, the Whites' second plan attempted to reduce the amount actually owed to FCU, this time claiming that, if they owed anything, it "should not exceed $76,556.70." R. at 340. With this new plan, the Whites still proposed that FCU receive $30,000.00 in state funds, but increased the amount they would pay to $45,000.00, this time amortized over 40 years. The plan included a number of contingencies and liquidated payments to be made to them by the creditors, particularly FCU, pending the results of collateral proceedings unrelated to the bankruptcy. R. at 320. These included FCU

agreeing, by confirming the plan, to paying the "Whites $175,000.00 for liquidated damages related to their loss of credit rating, pain & suffering, and related issues, in addition to any direct damages" if the Whites prevailed over FCU in their state court appeal. *Id*. The Whites also inserted a condition that FCU would pay them $250,000.00 if the Whites lost their home to foreclosure but prevailed in the state court appeal. *Id*. Lastly, the Whites also required those payments to be made by FCU if "a government regulator deems the credit union to have committed any errors or wrongdoing in this matter" even if the Whites do not prevail in their state court appeal. *Id*.

The bankruptcy court declined to affirm the Whites plan and granted the motion to convert, converting the proceeding to a Chapter 7 bankruptcy, and lifted the stay imposed upon property securing the FCU and Ally loans. The Whites appealed to this Court.

## II.

A motion for reconsideration will be granted if the moving party shows: "(1) a palpable defect, (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case." *Michigan Dept. of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733-34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(g)(3)). A "palpable defect" is "obvious, clear, unmistakable, manifest, or plain." *Id.* at 734 (citing *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 2d 262, 278 (E.D. Mich. 1997).

## III.

The Whites make a number of claims in their motion for reconsideration. Most important of them is the claim that the Court did not correctly account for the real interest rate on their mortgage, rather than the rate argued for by Frankenmuth Mutual. From that argument the Whites make a series of arguments about their ability to propose and satisfy a viable Chapter 11

plan. The Whites also allege that the Court made various discrete errors unconnected to the assessment of the Whites' mortgage indebtedness. None of the arguments the Whites make have merit.

**A.**

The first and perhaps most important issue the Whites raise is one they have already unsuccessfully raised on appeal. They argue that they did not have a Visa Gold Home Equity line of credit with a 7.9% interest rate but actually a Prime Visa Gold credit card with a 3.25% interest rate. There is copious evidence in the record against this argument. The credit application that the Whites attach to their reply brief in support of their motion for reconsideration can be used to apply for a Prime Visa Gold at the prevailing prime interest rate or a Visa Gold Home Equity line of credit at 8.9 – 9.9%. The application does not indicate which line of credit was actually obtained, but the record provides the answer.

In the record is a disclosure dated July 6, 2007 that is signed by Michael and Darla White. The disclosure acknowledges that the Whites have obtained a Visa Gold Home Equity line of credit with a starting annual percentage rate of 7.9% and a maximum rate of 15%. Additionally, there is July 14, 2007 letter of understanding that is signed by Michael White confirming these same details. The Whites cannot now claim that they actually agreed to a lower rate or were somehow entitled to a lower rate.[3]

**B.**

---

[3] The Whites include an affidavit from a CPA that also acknowledges that the Whites agreed to the 7.9% interest rate. The only support the CPA attempts to lend the Whites is the statement that the 7.9% rate "was slightly under the prime rate and while the prime rate declined steadily over the next several years, a lower rate was never charged to the Whites." CPA Anderson Aff., ECF No. 27. But this is nothing more than an observation that the Whites agreed to a 7.9% interest rate and that nothing in their agreement contemplated their rate falling below that figure.

Since the Whites cannot reasonably contest the interest rate associated with their mortgage they likewise have no basis for contesting the amount due under the note.[4] The Whties claim, though, that even if the outstanding balance of approximately[5] $113,000 is valid, they demonstrated during the bankrupcty proceeding that they could service this indebtedness:

> Even if the interest rate was not corrected Whites showed they could make a payment even at 7.9%. The judgment of foreclosure was $113,000 at 7.9% APR equals $743.88 per month. The state court did not allow additional legal fees to be a secured debt. The only issue is adjusting the length of repayment of the arrearages.

Appellant's Reply Br. 6, ECF No. 27. But the built-in assumption in the Whites' argument, which they concede at the end of the above-quoted section of their brief, is that the remaining mortgage balance would be amortized over 30 years. The Whites do not explain why they would have the right to impose that modification on their mortgage with Frankenmuth Mutual.

As already explained in the Court's July 31, 2015 Opinion, the Whites cannot modify their Block Road mortgage under a Chapter 11 plan. Nothing presented in their motion for reconsideration explains how that conclusion was erroneous.

Since the Whites cannot explain how the indebtedness under the mortgage note is incorrect and cannot justify altering that indebtedness, they must demonstrate an ability to meet their mortgage obligation if they are to propose a viable Chapter 11 plan. They cannot. The fact that the Whites were able to make monthly $822 maintenance payments imposed by the bankruptcy court is not evidence that they are able to make payments consistent with servicing the debt set forth in Frankenmuth Mutual's amended claim. Frankenmuth Mutual claimed that the Whites' indebtedness at the time of bankruptcy was $158,401.60. The terms of the mortgage

---

[4] That is, other than their claims under federal law that the mortgage itself is invalid. Those claims will be addressed below.

[5] The judgment of foreclosure entered by the Circuit Court for Saginaw County totaled $113,789.73.

require a payment per month of 1% of the outstanding balance on the line of credit. This would amount to a payment per month of $1,584, nearly double the maintenance payments imposed by the Bankruptcy Court. The Whites' ability to make the maintenance payments are not evidence that they could have serviced their mortgage debt under a valid Chapter 11 plan that did not modify Frankenmuth Mutual's rights as a creditor.

The mortgage with Frankenmuth Mutual was the substantial balance of the Whites' indebtedness. All of the Whites other claims in their motion for reconsideration that demonstrate an ability to craft a workable Chapter 11 plan do not alter the fact that the Whites did not demonstrate an ability to pay their mortgage. Their bankruptcy was rightly converted to a Chapter 7 proceeding.

## C.

The Whites make a number of other miscellaneous claims but none of them point out any palpable defect with the July 31 Opinion. Nevertheless, they will be briefly addressed.

### 1.

First, the Whites contend that the Court alternates between cash basis and accrual basis accounting in its July 31 Opinion. It does not. Rather, the references to accrual basis accounting are merely illustrative. The references demonstrate that even if the Whites could avail themselves of accrual basis accounting, as they sought to, they have not demonstrated how it would alter their financial circumstance.

In a somewhat similar vein, the Whites allege that the Court confused income statements and cash flow statements when discussing the Whites' financial performance. But the Whites do not substantiate how this was so other than to state: "Had the Whites treated their income and expenses as they do for IRS cash basis income tax purposes (legally, of course) such items as

food would not be treated as income- not expense." Appellant's Mot. Recons. 2-3, ECF No. 19 (sic throughout). This claim does not make sense. Assuming the Whites mean that their food expenditures would be treated as income, they do not explain what tool of accounting would allow them to do so.

To that end, the Whites have not substantiated how any of their monthly operating reports incorrectly report the state of their financial affairs. Many of those reports show the Whites expending more money per month than they are earning. This is a negative cash flow. If the Whites are using cash basis accounting, as they claim they are, they are producing cash flow statements. The July 31 Opinion does not indicate otherwise and never mentions that the Whites are using either accrual basis accounting or producing income statements. All the July 31 Opinion does is demonstrate how the alternative method of accounting would not aid the Whites.

**2.**

Next, the Whites argue that the Court erred in stating that they did not service their car loan with Ally Financial during the pendency of the bankruptcy and seek an accounting of their indebtedness to Ally. This point is meritless. The Whites attempt to demonstrate that Ally's statement of indebtedness was incorrect is self-contradictory. The Whites explain that on July 30, 2013 Ally's "proof of claim alleges $9,863.73 balance" and arrearages of $709.71. Appellants' Mot. Recons. 3, ECF No. 19. Then, "Ally states the balance is $4,145.50 on January 26, 2015." *Id*. Whites take issue with this changing valuation because, they claim, they should be reporting principal payments as income and interest payments as expense. Instead, they explain, they reported the entirety of their payments to Ally as expenses.

As with the prior discussion concerning the reporting of their food expenses, the Whites do not explain how converting a cash asset into a tangible asset is income. This is their only

argument for an accounting from Ally, and it is meritless. Further, there is evidence in the record, based on the Whites' monthly operating reports, that they missed payments to Ally. It is only after the bankruptcy court imposed an obligation to pay $325 per month to Ally that the Whites began making regular payments.

The July 31 Opinion did not err on this point.

### 3.

Next, the Whites claim that the Court "jumps from cash accounting to accrual for Frankenmuth Credit Union." *Id*. at 4. But this assertion is unsupported both in the Whites' brief and by the July 31 Opinion. It is meritless.

The Whites appear to attempt to connect this assertion to the fact that between July 30, 2013 and June 26, 2015 the debt claimed by Frankenmuth Mutual increased from $113,789.23 to $135,000. But this is misleading. First, the $135,000 figure is outside of the record and was produced by Frankenmuth Mutual after the appeal was taken in this case. Second, the indebtedness did not increase by that amount. The $135,000 figure is the amount that the trustee will tender to Frankenmuth Mutual in satisfaction of its claim, after the sale of the Block Road property closes. The order that the Whites cite to (again, outside the record) reflects that the Whites' indebtedness had actually swelled to $167,500. *See In re: Whites*, ECF No. 358, Case No. 13-21977.

The Whites appear to confuse accrual basis accounting with the accrual of interest on the loan indebtedness. They are different things. While an entity may employ accrual method accounting to account for its right to collect increasing sums of indebtedness as the result of unserviced interest, the two are not the same. The Whites' indebtedness continued to increase irrespective of the accounting method employed by Frankenmuth Mutual.

**4.**

Fourth, the Whites object to the Court's characterization of their significant devaluation of their assets. They argue

> [I]t appears this court is implying the adjusts are actual losses incurred by Whites, however, a correct reading of Chapter 11 Trustee's brief verifies these are not reduction due to financial losses, but merely a (large) correction to reflect values on the date of filing bankruptcy. These adjustments can not, in any way, be used to justify conversion of the case.

*Id*. at 4 (sic throughout). The Whites are incorrect on both points they make. First, there is no implication that the Whites suffered a loss when they adjusted their property values downward. The July 31 Opinion, in the portion cited by the Whites (page 3) simply recounts what actually occurred at the bankruptcy court: the Whites greatly reduced the estimated values of two of their assets. Second, the Whites are also incorrect that this cannot be used to justify conversion. They offer no authority for why a significant downward adjustment in the value of a debtor's assets cannot be considered when determining the debtor's ability to satisfy a Chapter 11 plan. To the contrary, it is entirely relevant.

**5.**

The Whites next argue that they were able to make court-ordered payments to Ally and Frankenmuth Mutual. It follows, they claim, that they can propose a workable Chapter 11 plan of reorganization and pay their indebtedness under that plan. But the two are not directly related. While making the payments is some evidence of the Whites' financial health, it does not change the fact that the Whites proposed two impermissible plans. It also does not change the fact that their payments to Frankenmuth Mutual were far below what they actually owed in monthly payments on the mortgage.

**6.**

The Whites further allege that "[t]he Chapter 11 never came forth with any affidavit or other testimony of an accountant stating the losses were significant and continuing. This alone is grounds for re-instatement of Chapter 11." *Id.* at 5. No such requirement exists. The Whites' monthly operating reports speak for themselves. The frequency of the losses the Whites were suffering was evidence on the face of the reports. Combined with the speculative income they claimed they would obtain, there was sufficient evidence that the Whites were facing a significant and continuing loss.

**7.**

Additionally, the Whites assert that the Court erred in its analysis of 11 U.S.C. § 1123(b)(5), which governs the ability of debtors to modify claims secured by an interest in real property that is the debtor's principal residence. The Whites do not make any new arguments on reconsideration. The only additional evidence offered is that the Chapter 7 Trustee partitioned the land into a six acre residence and a separate farm parcel when selling the Block Road property. But this does not mean that the entirety of the Block Road property did not fall under 11 U.S.C. § 1123(b)(5). The bankruptcy code prohibits debtors from dividing parcels in an attempt to modify a secured claim. It does not prohibit a Chapter 7 Trustee from dividing a parcel when selling the estate. The Whites have not demonstrated how the July 31 Opinion erred on this point.

**8.**

Lastly, the Whites claim that the July 31 Opinion erred in its application of the Rooker-Feldman doctrine to their case. They argue that they could not have litigated their federal claims in state court and had to wait until they were in bankruptcy court which is the "correct forum." *Id.* at 6. They are mistaken. State courts are presumed to have equal capacity as federal courts to

hear federal claims. This is an old principle. *See Robb v. Connolly*, 111 U.S. 624, 637 (1884). The only exception to this principle is where exclusive jurisdiction is vested in the federal courts. The Whites have not alleged that the federal courts have exclusive jurisdiction over Truth In Lending Act claims or Fair Credit Billing Act claims. Their argument is meritless.

## IV.

Since the Whites took this bankruptcy appeal, they have taken two other, related appeals: Case Nos. 15-11310 & 15-12354. They have filed two motions on the docket in this case that relate solely to those two appeals. The motions are unrelated to this case. They will be denied as moot.

## IV.

Accordingly, it is **ORDERED** that the Whites' Motion for Reconsideration, ECF No. 19, is **DENIED**.

It is further **ORDERED** that the Whites' unrelated motions, ECF Nos. 26 & 28, are **DENIED as moot**.

Dated: March 7, 2016               s/Thomas L. Ludington
                                    THOMAS L. LUDINGTON
                                    United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 7, 2016.

                              s/Michael A. Sian
                              MICHAEL A. SIAN, Case Manager